UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AHMED BABWE,

Petitioner,

v.

MARKWAYNE MULLIN, ET AL

Respondent.

Case No. 2:26-cv-02797-TLF

ORDER

Petitioner Ahmed Babwe has filed a petition for habeas corpus under 28 U.S.C. § 2241, challenging his immigration detention. Dkt. 1, Habeas Corpus Petition. He is currently detained at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington. Dkt. 10, Return Memorandum, at 1. The parties have unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 7.

Having considered the petition, the briefing, and the record, the Court GRANTS the petition in part; petitioner's continued detention violates due process. The respondents must release petitioner within 24 hours under his prior conditions of release.

## I. BACKGROUND

Petitioner is a citizen and national of Mauritania. Dkt. 11, Declaration of Deportation Officer Enrique Rodriguez (Rodriguez Decl.), at 1. He entered the United States without inspection and was encountered on July 19, 2024, near the border between the United

States and Mexico, at Yuma Sector in Texas[1]. Dkt 11, at 1. He was placed into custody by Border Patrol on the same day, and he was referred to USCIS for a determination of credible fear, after petitioner stated he was fearful of returning to Mauritania. Dkt. 11, Rodriguez Decl., at 2; Dkt. 12-2, Notice to Appear and credible fear finding.

Respondents state that petitioner was placed on parole, under 8 U.S.C. § 1182(d)(5)(A) on August 23, 2024, after the USCIS determined on August 10, 2024 that petitioner established a credible fear of persecution. Dkt. 11 at 2. The release order of parole was valid for one year (Dkt. 12-4, Order Authorizing Parole); ICE did not extend the parole after it expired. Dkt. 11, Rodriguez Decl., at 2.

Conditions of parole included, but were not limited to, keeping ICE and the Immigration Court informed of any change of address, attending hearings, and attending ICE appointments. *Id.* at 3; Dkt. 12-4.

The government alleged that on several occasions in 2024, 2025, and 2026, petitioner violated conditions of release by failing to attend appointments or failing to update his address; on July 13, 2026, Enforcement and Removal Operations (ERO) in Seattle arrested him for those violations during a scheduled ICE check-in appointment. Dkt. 11 at 3; Dkt. 12-3. The warrant of arrest and notice of custody determination are dated July 14, 2026, but the warrant has a date of service on July 13, 2026. Dkt. 12-3.

---

[1] Officer Rodriguez's declaration states petitioner entered the United States in Texas; other documentation suggests petitioner entered in Yuma, Arizona. *See* Dkt. 12-1, Form 213.

Petitioner requested a custody re-determination. Dkt. 12-3 at 5. Petitioner is scheduled for a master hearing at the Immigration Court in Tacoma on September 1, 2026. Dkt. 11 at 4.

## II. ISSUE

Did the government detain petitioner, by revoking parole under 8 U.S.C. § 1182(d)(5), and 8 U.S.C. § 1225(b), or is he held under 8 U.S.C. § 1226(a); and did respondents arrest and detain petitioner using procedures that are consistent with the Fifth Amendment right to procedural due process?

## III. DISCUSSION

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . " U.S. Const.. amend. V. This right extends to "all persons within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Here, petitioner argues his detention violates the Due Process Clause under the factors created by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See* Dkt. 1 at 12-13, 15. To assess petitioners' arguments, the Court adopts the reasoning of *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320-24 (W.D. Wash. 2025), in weighing the *Mathews* factors which include: (1) The private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that

the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335; *Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (2022) (assuming without deciding that the *Mathews* test applies "in the immigration detention context.").

The respondents contend that petitioner is currently detained under 8 U.S.C. § 1225(b) as an arriving alien subject to mandatory detention. Dkt. 7 at 1. Petitioner argues that he has been living in the United States, and the government has treated him consistent with 8 U.S.C. § 1226(a) at the time petitioner requested a bond hearing. Dkt. 1 at 5-7.

But regardless of the statutory basis of petitioner's detention, the Due Process Clause may provide procedural protections not found in the statute. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A. T.-B. v. Wamsley*, 795 Supp. 3d at 1322) ("the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'").

When petitioner was first apprehended in 2024, he was processed for expedited removal by USCIS and ICE as an alien present in the United States who has not been admitted or paroled. Dkt. 11, Rodriguez Decl. at 1-2; Dkt. 12-2 at 1,3; Dkt. 12-4 (Notice to Appear, and Interim Notice Authorizing Parole, dated August 23, 2024).

Noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an intention

to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter, if the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112.

Under § 1225(b), "the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole 'for urgent humanitarian reasons or significant public benefit.'" *Banda*, 385 F. Supp. 3d at 1112 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

Even if the statutory terms of § 1225(b) do not require a bond hearing, petitioner's continued detention must comport with due process. *See Boumediene v. Bush*, 553 U.S. 723, 797 (2008) (holding that habeas corpus applies to detainees who were classified as enemy combatants and held at Guantanamo Bay; "few exercises of judicial power are as legitimate or necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."). "Any argument that ICE acted within its authority has no affect [sic] on a claim contending that detention violates Constitutional Due Process." *Francois v. Wamsely*, No. C25-2122-RSM-GJL, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) (citing *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *2, n.2 (W.D. Wash. Sept. 17, 2025)).

When petitioner was arrested in July 2026 and re-detained, the record shows he was being processed under § 1226(a). Dkt. 11, Rodriguez Decl. at 3-4. He was served with Forms I-200 and I-286, which allowed him to request a custody redetermination in

a hearing conducted by an Immigration Judge. Dkt. 12-3 at 5. The Form I-200 states that petitioner was released under an “Order of Release on Recognizance” (OREC); the examining officer noted that “SEA ERO management approved a custody redetermination, and an ERO supervisor issued Form I-200, Warrant of Arrest of Alien.” Release or “conditional parole” under an OREC is authorized under § 1226(a)(2)(B). *See* 8 U.S.C. § 1226(a)(2)(B); *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding noncitizens released on an OREC must necessarily have been detained and released under § 1226). No custody redetermination hearing has yet occurred. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. July 30, 2026). Under the circumstances of the arrest and re-detention of petitioner in July 2026, he was subject to § 1226(a).

1. Private Interest

As to the first factor, petitioner’s interest in not being detained is “the most elemental of liberty interests[.]” *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Court rejects the notion that petitioners’ weighty liberty interest in not being detained is greatly diminished solely because they are noncitizens in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action) *see also Zadvydas*, 533 U.S. at 693 (“[T]he Due Process Clause applies to all “persons” within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.”).

Petitioner was arrested on July 19, 2024 and detained until August 23, 2024; he was granted a one-year period of release; after being on parole between August 23,

2024 and July 13, 2026, he was re-arrested and has been detained for weeks; his liberty interest in remaining free of restraint and not subject to incarceration is clearly a constitutionally protected liberty interest. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]").

If the government is aware of a noncitizen's presence in the country without legal status and "acquiesce[es]" in their continued liberty, "reliance on [their] freedom create[s] a constitutionally protected liberty interest that cannot be extinguished without due process." *A.B.J.C. v. Hermosillo*, No. 2:26-CV-00185-JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026) (Granting habeas petitioner's release and finding, under *Mathews*, that where the government released petitioner on an OREC in 2020, affirmatively moved to dismiss his removal proceedings in 2022, and acquiesced in his freedom for six years, petitioner's reliance on his freedom created a constitutionally protect liberty interest requiring due process consisting of pre-deprivation notice and a hearing before a neutral decisionmaker); *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 at *2 (N.D. Cal. Feb. 25, 2026) (Granting habeas petitioner's motion for temporary restraining order and directing release where petitioner entered the United States on a nonimmigrant visa and subsequently applied for asylum such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status. The Court reasoned petitioner had a protected liberty interest because, "[a]lthough the government did not detain and then release her, it

made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); *Kalkan v. Chestnut*, No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); *Carriollo v. Albarran*, No. 3:26-CV-05836-JSC, 2026 WL 1734895, at *2 (N.D. Cal. June 16, 2026) (Granting habeas petitioner's motion for preliminary injunction and directing petitioner's release where petitioner entered on a visa, applied for asylum and the government did not detain petitioner for several years after the visa expired, reasoning "[t]hat the government has not sought to detain Petitioner over the past six years while his immigration applications have been pending reflects a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria."); *Vazquez v. Mullin*, No. C26-2039-KKE, 2026 WL 1911507 (W.D. Wash. July 2, 2026) (granting habeas petition and directing release under *Mathews* analysis where petitioner's visa expired and the government did not detain petitioner for over five years thereafter).

Thus, having made the decision not to detain petitioner beyond the one-year parole expiration (the one-year term expired on 8-23-2025), and the asylum application remains pending based on petitioner's claim of credible fear, petitioner has a strong interest in remaining at liberty. The Court finds this factor weighs in petitioners' favor.

2. Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 335.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet there "may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 - *12 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031-32, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

If a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally requires a showing of a material change in circumstance. *See, e.g.*, *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where government presented no evidence that "a change in circumstances" supported its decision to revoke the IJ's bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Here, petitioner was not provided with adequate notice of the allegations or an opportunity to respond prior to, during, or immediately after arrest. There was no neutral

decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE's assertions before petitioners' detention. There was no assessment of petitioners' flight risk or dangerousness to the community either prior to, during, or after his detention. *See Rios-Rodriguez v. Blanche,* 2:26-cv-02117-RFB-MDC, 2026 WL 2280924 at *6-*7 (D. Nevada, August 7, 2026) (stating that the government was ignoring regulations that require adequate notice before re-arrest, and opportunity to be heard at the time of re-arrest, and before detention is ordered, under § 1226(a)).

Here, petitioner requested a custody redetermination, but he should have received a hearing at a meaningful time — before being arrested. *See Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 496-497 (S.D.N.Y. 2025) (observing that under § 1226(a) and 8 C.F.R. § 236.1(d)(1), an initial decision must be made by ICE before an individual is arrested and detained, and this requires a deliberative process before or contemporaneous with the re-arrest).

Petitioner asserts, and the respondents do not dispute, that Mr. Babwe has no criminal history, that he has applied for asylum, and the only ground given for detention was the alleged failure to update their address within 10 days of relocating within the United States, and failure to attend some of the check-ins.

Furthermore, 8 U.S.C.A. § 1306(b) provides:

> Any alien or any parent or legal guardian in the United States of any alien who fails to give written notice to the Attorney General, as required by section 1305[[2]] of this title, shall be guilty of a misdemeanor and shall, upon

[2] 8 U.S.C. § 1305(a) provides: "Each alien required to be registered under this subchapter who is within the United States shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change and furnish with such notice such additional information as the Attorney General may require by regulation."

> conviction thereof, be fined not to exceed $200 or be imprisoned not more than thirty days, or both. Irrespective of whether an alien is convicted and punished as herein provided, any alien who fails to give written notice to the Attorney General, as required by section 1305 of this title, shall be taken into custody and removed in the manner provided by part IV of this subchapter, ***unless such alien establishes to the satisfaction of the Attorney General that such failure was reasonably excusable or was not willful***.

8 U.S.C.A. § 1306(b) (emphasis added).

Thus, assuming for purposes of analysis, that 8 U.S.C.A. § 1306(b) would potentially apply, here there is no evidence that any consideration was given to whether petitioner's failure to update his address was reasonably excusable or not willful; no hearing was conducted before petitioners' detention, nor has one been conducted at any point thereafter. The record shows that petitioner was given *Miranda* warnings, because interviewers intended to question him about "potential violations of the Alien Registration Act under 8 USC 1306" and petitioner exercised his right to remain silent. Dkts. 12-1 at 3 (Form I-213, dated July 13, 2026); 12-3. The seriousness of these allegations warrants a hearing with due process protections.

Petitioners' alleged failure to update an address on its own as the sole violation of a condition of release is the type of circumstance that requires a pre-deprivation hearing. *See Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2026 WL 251798, at *2, 5 (W.D. Wash. Jan. 30, 2026) (finding petitioner faced a high risk of erroneous deprivation where the government detained him for alleged failures to report address changes without providing him with clear notice of the basis for re-detention and a meaningful opportunity to be heard before the deprivation); *Dieng v. Mullin*, No. 26-cv-

01336-TLF, 2026 WL 1469601 (W.D. Wash. May 26, 2026) (same); *Rana v. Bondi*, No. 2:26-CV-00268-DGE, 2026 WL 445049, at *4 (W.D. Wash. Feb. 17, 2026) (same).

The Court finds, under the circumstances, the risk of erroneous deprivation is high. Thus, the Court finds the second *Mathews* factor favors petitioners.

3. The Government's Interest

The third and final *Mathews* factor also weighs in petitioner's favor. *Mathews*, 424 U.S. at 335. Respondents' interest in civil detention without a hearing is low. *E.A. T.-B.*, 795 F. Supp. 3d at 1323-24 (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)) ("'If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.'").

The Court accordingly finds petitioner has a protected liberty interest in continuing release from custody and all the *Mathews* factors weigh in his favor. Petitioner's detention violated due process.

In *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1206-07 (9th Cir. 2022), the Ninth Circuit held that "the existing agency procedures sufficiently protected [petitioner's] liberty interest and mitigated the risk of erroneous deprivation. *Rodriguez Diaz*, 53 F.4th 1209. The Court stated:

> "Pursuant to § 1226(a) and its implementing regulations, when ICE initially detained Rodriguez Diaz, an ICE officer made an individualized custody determination. *See* 8 C.F.R. § 236.1(c)(8).[3] This involved evaluating

[3] The provision reads: "Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any

> [petitioner's] likelihood of "appear[ing] for any future proceedings" and potential "danger to property or persons."

*Id.*

Multiple courts have held that 1226(a) requires an individualized custody determination *before* detention. *See e.g.*, *Pastrana-Beltran v. Mullin*, No. 26-CV-2657 (RER), 2026 WL 1398609 (E.D.N.Y. May 19, 2026) ("…section 1226(a) affords [petitioner] an initial custody determination before exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk."); *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20 Civ. 2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020) (holding that, before detention "§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination"); *Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025) ("If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk."); *Curimilma Quille v. Blanche,* No. 26-CV-2818 (HG), 2026 WL 1453889 , *4-*5 (E.D.N.Y. May 22, 2026) (holding petitioner was denied due process because ICE's initial custody determination was inadequate and 1226(a) requires an individualized custody determination); *Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, *4

---

future proceeding. Such an officer may also, in the exercise of discretion, release an alien in deportation proceedings pursuant to the authority in section 242 of the Act (as designated prior to April 1, 1997), except as otherwise provided by law." 8 C.F.R. § 236.1(c)(8).

(E.D. Pa. June 17, 2026) ("The initial [1226(a)] custody determination requires "an individualized determination as to ... whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'").

Here, no evidence in the record suggests that ICE made an individualized custody determination before or contemporaneously with petitioner's detention. Petitioner attended a scheduled appointment on July 13, 2026 and the violations of release conditions came to the attention of Seattle Enforcement and Removal Operations during "routine systems checks." Dkt. 12-1, Form I-213 at 3. According to an FBI records check, as documented in the Form I-213, petitioner had no criminal history. *Id.* at 4. This form does not identify any individualized assessment of petitioner's likelihood of appearing at future proceedings or potential for future dangerousness.

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). After applying the test, the Court held "1226(a)'s procedures satisfy due process, both facially and as applied to [petitioner]." Even so, the Court expressly stated:

> "In so holding, we do not foreclose all as-applied challenges to § 1226(a)'s procedures. "Due process is a flexible concept that varies with the particular situation." *See Yagman*, 852 F.3d at 863 (quoting *Shinault v. Hawks,* 782 F.3d 1053, 1057 (9th Cir. 2015)). The government agrees that its position here does not mean detained aliens can never bring as-applied due process challenges to § 1226(a)."

*Id*. at 1213-14.

The Court also finds a post-deprivation bond hearing is an inadequate procedural safeguard. The purpose of habeas corpus is to return the petitioner "to the position he

would have been in if the [constitutional] violation never occurred." *Lujan v. Garcia,* 734 F.3d 917, 935 (9th Cir. 2013) (simplified; citing *Nunes v. Mueller,* 350 F.3d 1045, 1057 (9th Cir. 2003)).

Because a post-deprivation hearing would occur only after detention and, under the circumstances, would not address an erroneous deprivation of liberty at a meaningful time, it is not an effective remedy. *E.A. T.-B.*, 795 F. Supp. 3d at 1323-24 (quoting *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("'Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.'"); *see also Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ."); *see Kumar*, 2026 WL 251798, at *2, 5 (finding petitioner faced a high risk of erroneous deprivation where the Government detained him for alleged failures to report address changes without providing him with clear notice of the basis for re-detention and a meaningful opportunity to be heard before the deprivation).

## IV. CONCLUSION AND ORDER

For the above reasons, the petition for writ of habeas corpus (Dkt. 1) is GRANTED IN PART, and the Court ORDERS as follows:

(1) The Court holds that respondents' re-arrest and re-detention of petitioner on July 13, 2026 was implemented under 8 U.S.C. § 1226(a), but even if he is detained

under 8 U.S.C. § 1225(b), under either statutory framework, the Court declares his due process rights were violated.

(2) The Court ORDERS respondents to release petitioner from custody within 24 hours of the filing of this Order, on conditions of release that were in place before petitioner was re-arrested on July 13, 2026.

(3) No later than 48 hours after petitioners' release, the respondents must file with the Court a declaration confirming the date and time petitioner was released from custody.

(4) As the Court has granted release as a remedy for the petitioner's due process claim, the Court declines to address the other issues raised, because they are either moot or not directly within the Court's habeas corpus authority to issue a remedy (for example, petitioner requests compensatory and punitive damages, Dkt. 1 at 15, yet the Court cannot award damages for a habeas corpus petition).

(5) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining petitioner unless and until he is provided with adequate notice and a hearing, consistent with due process, before an immigration court to determine whether re-detention is appropriate.

(6) The Court will entertain any appropriate post-judgment motion for attorney's fees.

Dated this 1st day of September, 2026.

Theresa L. Fricke
United States Magistrate Judge